Case number 18-1244-NL. Ingredion Incorporated, doing business as Penn Fork Products, requesting a petition of the Saskatchewan Labor Relations Board. Mr. Paul for the petitioner, Ms. Weiss for the respondent. Good morning. Good morning. Good morning and may it please the court. This court held in Mike's cells that if an employer remains firm on one or more essential issues and declares a final offer that is consistent with and logically follows from its bargaining position, the union's failure to agree creates an impasse. And that's precisely what happened here, even if you accept nearly all of the board's basic findings of fact as correct. Throughout the negotiations, both parties steadfastly contended that their preferred form of the agreement should form the baseline for all negotiations to follow. In fact, the ALJ himself characterized this as a major issue dividing the parties, and indeed it was. The day before impasse was declared, the union's chief negotiator said that Ingredion had to put its proposals in the format of the expired contract for there to be meaningful discussions, and he was absolutely right about that. By August 18, the day that impasse was declared, the union had requested and voted down a final offer, and it had conceded on only one of its original proposals, its proposal for herbal tea and stir sticks. Moreover, the only thing that the parties agreed upon was that they didn't have a single tentative agreement. So, Ingredion presented its last, best, and final offer, and as it had with its prior offers, it did so in a format that was consistent with the CBAs it has at its other facilities. And in response, the union presented a new offer, but critically it didn't meet Ingredion's proposal, as it was in the format of the expired contract. At this point, under this court's case law, there was an impact. This court said in Mike Sells that the union's denial that an impasse exists, combined with a new negotiating position that does not meet the company's position, does not rebut the fact of an impasse. The ALJ nevertheless believed that further bargaining would produce a contract, but as in TrueServe, that conclusion was not based on substantial evidence. It was based on the ALJ's intuitive belief. Yes, after Ingredion presented its final offer, the union made concessions, but critically it did not make a concession on the one point that had ultimately divided the parties, the format of the agreement. So your position is where your client said we're starting from scratch, impasse at that point, regardless of what the union did after? No, Your Honor. No, I'm just trying to understate your position to its ultimate extremes. Well, the parties met on ten separate days prior to the declaration of the last, best, and final offer, and in that time our client, Ingredion, made a series of concessions on a number of substantive issues. Precisely. Yes. The client moved. Yes. The union moved. Prior to the declaration of impasse, that's correct. They made a series of concessions, but critically the union did not move on the one issue that had led to the impasse. That's my question. Yes. The format of the agreement. Your position is if the employer says we're starting from scratch, it doesn't matter what the parties do after that. At some point the employer can simply say impasse. Yes. And there were a series of findings here, and you're not attacking those findings because you're saying even accepting those findings, you think there was, in the board's terms, a valid impasse. I think you're correct, but you may be drawing the wrong conclusion. I understand you think that way. I'm just trying to understand why you think this court could hold that there was not substantial evidence to support the board's position that there was not a valid impasse. I initially heard your argument couched more as an error of law. We are contesting the board's ultimate findings and its reasoning. There are a couple of basic findings of fact that we contest that are not supported by substantial evidence, but it's ultimately the reasoning and ultimate findings that we contest. And to your point about our declaring an impasse, you have to remember that the parties get to decide what issues are important to them. And to say that we had a duty to continue to negotiate in the face of the union's refusal to meet our proposal would be to privilege the union's proposal over ours, as they insisted on bargaining from the expired contract, and we likewise in turn insisted on bargaining from a new form of proposal. Both parties were entitled to hold those positions, and to hold otherwise would be to improperly insert oneself into the middle of the parties' negotiations. That's our essential position. Now, as for the question of good faith, Ingrid and I genuinely desire to reach an agreement. As I said, the ALJ found that the parties met on a regular basis from June until September, 10 separate days before the declaration of impasse, and then three more days after that. In that time, they discussed a variety of substantive topics. Likewise, the ALJ found that Ingrid and I made a series of concessions. In fact, if you look at the General Council's own demonstrative exhibit tracking the proposals, which is General Council Exhibit 92, I count some 50 changes that Ingrid and I made along the way, which again is in contrast to the fact that the union gave up on only one of its original proposals. Can I just go back to the impasse question for a second? So is it your view that once the declaration of impasse has happened, that the board is prohibited from taking into account anything that happened after that? For purposes, yes, Your Honor. For purposes of determining whether there was an impasse. So no matter what happens between the parties, the board just has to turn a blind eye to it? Correct. And that makes sense, because if you, well, no, not turn a blind eye to it. It's relevant for purposes of determining whether the impasse has been broken, but not whether the impasse has been reached. That's how I read this Court's decision in Uri Abrosh and Laurel Bay. And it seems to me to make sense that if the evidence shows up to the point of declaration of impasse that an impasse has been reached, it doesn't make much sense to go beyond that to determine whether an impasse had been reached in the past. It makes sense for determining whether there were changed circumstances such that the impasse was broken, which is a different issue, but not whether the impasse was reached. So going back to the issue of good faith, the final point I want to make here is that our desire to negotiate from a new form of a contract was entirely appropriate, as the ALJ himself found on the first day of bargaining. Ingridian explained that it wanted a new form of contract so that it could integrate the Cedar Rapids facility into the rest of its operations. And the Wallight Court explains that that's a perfectly reasonable desire, because no party has a standing entitlement to any particular format of contract. Unless there are any further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Good morning. Good morning. Eric Weiss on behalf of the Board. I'd like to begin just by taking a step back and emphasizing the Board's ultimate finding here, which is that Ingridian failed to carry its burden of establishing that impasse existed as of September 14, 2015, when Ingridian implemented its last best final offer. To make that finding, the Board thoroughly examined all of its traditional TAC broadcasting factors. The ALJ, as affirmed by the Board, provided a very detailed analysis of what occurred during bargaining, from appendix page number 2195 to 2202. Ingridian is not directly challenging most of those findings, in fact, as to what occurred day-to-day during the bargaining in support of the Board's ultimate finding. To turn to, I guess, one of the main issues that Ingridian is raising regarding the format of the contract proposals, as the Board explained, that was not an impediment to substantive bargaining in this case. Very early in the bargaining, the parties agreed that they were going to continue to present their proposals in this particular format. Empirically, that did not prevent them from making further progress because both parties continued to move up until the unilateral implementation in mid-September. In addition, just as a legal issue, I've emphasized to the Court that the general rule is that impasse over a single issue does not create overall impasse. The Board has a special doctrine known as the CalMAT doctrine, which this Court has analyzed, for example, in the Erie Brush case, which is a three-factor test that an employer making that claim has an additional burden to meet these three factors, the first of which is that there is genuine impasse in the first place, which, as the Board found in this case, was not the case, the third of which the employer has to affirmatively show that, to quote the Board, there can be no progress on any aspect of the negotiations until the critical issue is resolved. And Ingridian has not made that showing in this case, particularly given, first of all, the facts of the case where the parties did continue to make progress and incorporate language from each other's proposals and to summarize each other's proposals relative to the baseline format of the offers. Secondly, Ingridian has not presented any case in which the format of the proposal at the bargaining table would be a critical issue that would prevent further substantive bargaining. I'd just like to highlight to the Court the dispute between the parties was not necessarily over what the final contract had to look like. The union's dispute with the company was that they found it counterproductive for proposed changes to be presented in this format of an entirely new agreement, first of all, because that was difficult to track what was actually being changed from the expiring agreement, which was rooted in 70 years of bargaining history. The union made that point early in bargaining. An additional point that the union made after the employees overwhelmingly voted down Ingridian's last offer was that the union said to the employer, we think this is counterproductive and the employees are less likely to agree to an entirely new contract, which is just presented as a 70-page document and does not actually track, for example, in redlining, what is being changed from this established expiring contract. So it was not a substantive dispute over what the final contract had to look like or a substantive dispute as to any particular term of the contract. It was a dispute about how the bargaining would proceed at the bargaining table. And Ingridian has not made an argument or cited any case law that that could constitute a CalMet critical issue that would prevent any further bargaining over substantive issues and that would lead to impasse. And again, to reiterate once more, that's empirically disproven in this case because of the way the bargaining unfolded and because of the many concessions that the parties made. So if I could turn to that issue and just highlight to the court a few of the major concessions that the union made. First of all, on August 18th, the day that Ingridian first purported to declare impasse, to cite some examples, at Appendix 328 to 329, the union incorporated grievance language from Ingridian's offer regarding the grievance process and default proceedings as to when grievances are filed. At this August 18th bargaining session, as Cameron offered, the union also made substantial concessions at Appendix 335 by dropping one of their main initial proposals, which was to reactivate a cost-of-living adjustment that would tie wages to increased cost-of-living increases. At Appendix 336, the union dropped a $2-an-hour raise with regard to training, which was a substantive demand they had initially been making. Can I ask this question, which is, if the employer says, there's one issue that's more important to me than anything else, and it's this one, it's make or break for me. I'm not going to negotiate over this. This is what we do everywhere, and unless you agree to bend on this issue, there's no point in going forward. And then the union comes forward after that and offers some concessions on a number of other issues over time, and the employer just doesn't do anything in response and keeps saying, you know, appreciate that, but as we've said all along, this issue, you haven't given us anything new on that one, so we don't see any point in going forward. What then? Well, Your Honor, obviously it would depend on the facts of the case because this is a very fact-intensive inquiry, but as a general matter, I think in that situation, it would be reasonable for the Board to find that there still was no impasse because if one party is continuing to make concrete substantive movement, because as the Board has recognized and as courts have recognized as we cite in our brief, when you continue to make movement on other issues, that has a tendency to advance bargaining and there may be compromise on this initial sticking point. And as to the arguments that the employer is making in his brief as to that sort of per se creating impasse, the Board's position is that that's sort of a misreading of what this Court said, for example, in Mike Sells. I think the most reasonable reading of that language in Mike Sells is that this Court was simply reiterating points it had earlier made, for example, in Laurel Bay, health care, and in the TrueServe case, and what the Court was saying there is that if you have essentially a substantive impasse and one party, for example, the union, wants to stave off impasse, the union cannot simply make a general claim that we want to continue bargaining, we're willing to meet again just as an attempt to stave off impasse. In that sense, the parties do not need to be in agreement about the existence of impasse, but as this Court has also recognized, consistent with Board law for decades, for example, in the Teamsters case from the early 90s, this Court's opinion, if either party shows actual concrete movement and is actually willing to move on substantive issues, then there is generally no impasse, and that's exactly what happened here. The union was not simply making a general claim to stave off impasse, saying we want to continue bargaining without making any actual movement or concrete signs of compromising. The union... So you think that the Board law and our case law does not allow either side to say that there is something that is, quote-unquote, a deal-breaker? Well, Your Honor, that is the CalMet doctrine, as, for example, this Court applied in the Erie Grush case. That can occur, but it's a special situation where there's a single issue, and impasse over the single issue means there's overall impasse, even if a party is showing movement on other issues. And the three-factor test for that special doctrine, the party claiming it, has to show that for some reason this single issue would prevent any further movement on other issues. So it's possible, and in fact it occurs, as it did in Erie Grush, where you have a single issue and that prevents more substantive discussions. But to highlight the type of situation where that generally occurs, like Erie Grush, that was a situation where the parties were negotiating to changes to a predecessor agreement, and so you had a baseline agreement, the expiring agreement. The parties narrowed down the issues they were willing to bargain over, the issues in dispute. In that case, I believe it was regarding the percentage contribution to the pension benefit fund. And so there was a small number of issues that were at issue in the first place, and the parties both took hard positions in that case. We cannot have a percentage contribution above this or below this. And because there were just loggerheads over that issue and there was a small universe of issues that were being negotiated in the first place, this court found that that was valid impasse. I recite those facts to contrast them with what happened here, which is that Ingridian said at the start, we want to open every single article and every single provision in this contract rooted in seven years of bargaining history and bargained from scratch. So the parties were negotiating over an entirely new agreement every single provision, and so that's a situation where there was obviously possible movement on other issues before unilateral implementation, and in fact the union showed major concrete movement on September 10th in its last offer when it adopted an agreement procedure and it dropped a longstanding labor relations committee and made other major concessions that we highlighted in our brief and that the board and the ALJ highlighted in the decision. And I see that I'm over time, so if the court has no further questions, the board would just ask for enforcement in full. Thank you. Thank you. Counsel for Petitioner. Your Honors, to the parties, form was substance. By holding that Ingridian could not go to impasse over the form of the agreement, you would be effectively privileging the union's position over that of Ingridian's, that the proper starting place for negotiations is the Red Book. There could be no further bargaining until that issue was resolved. Yes, they made concessions, but they did not make a concession on the key issue that had led to the breakdown. Initially the form was not an impediment to bargaining, but after Ingridian felt like it had given all it could give, it had given the union eight proposals by the time it had declared impasse, and the union had only adopted a handful of its proposals and had relented on only one of its own original proposals, at that point Ingridian was privileged to say, we have reached the end of our rope, and if you do not bargain based on the last, best, and final offer that we have given you, there's nothing more to discuss. As to post-impasse discussions, I want to emphasize that while there were three bargaining sessions after August 18th, CalMAT footnote 60 specifically says that bargaining may go on, even in the face of impasse, and that's totally consistent with this court's decision in Cerramonte-Oldsmobile and the Supreme Court's decision in Brown v. Pro Football. The parties are supposed to continue to negotiate at some point, and even then there were only three sessions. Two of those sessions lasted only a couple of minutes, as found by the ALJ, and while one lasted all day, it was consumed by a 12-hour caucus in which the union tried to formulate a new proposal, and when it came back and it became clear that the proposal was in the format of the expired contract, the session was done. So the post-bargaining behavior could not have negated the impasse. Thank you, Your Honors. Thank you. We'll take the case under advisement.
judges: Rogers, Srinivasan, Wilkins